IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DAVID HUNTER,

       Plaintiff,

v.                                 CASE NO. 2:12-cv-00031

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

      This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

      Plaintiff, David Hunter (hereinafter referred to as "Claimant"), filed an application for SSI on July 13, 2009, alleging disability as of December 15, 2006, due to hypertension, stomach problems, nerves, back, shoulder, chest, hip and leg pain. (Tr. at 171, 202.)  The claim was denied initially and upon reconsideration. (Tr. at 118-25, 126-28.) On March 24, 2010, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 129-31.) The hearing was held on July 22, 2010, before the Honorable Scott Anderson.  (Tr. at 34-112.)  By decision dated August 25, 2010, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 8-31.)  On November 10, 2011, the Appeals Council considered

arguments raised by his counsel, but determined they did not provide a basis for changing the ALJ's decision. (Tr. at 1-3.) On January 10, 2012, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform

other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 416.920(f) (2007).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of lumbosacral sprain with radiculitis, cervical muscle strain with radiculitis, blindness in left eye, left shoulder tendon[o]pathy/partial thickness tear with degenerative changes to the AC joint, and obesity.  Id.  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by exertional, environmental and reading limitations. (Tr. at 17.) As a result, Claimant cannot return to his past relevant work.  (Tr. at 23.)  Nevertheless, the ALJ concluded that Claimant could perform a variety of jobs which exist in significant numbers in the national economy.  (Tr. at 26-27.)  On this basis, benefits were denied.  (Tr. at 27.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

"evidence which a reasoning mind would accept as sufficient to

3

> support a particular conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less than a
> preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368

F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged

with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot

escape their duty to scrutinize the record as a whole to determine whether the conclusions

reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not

supported by substantial evidence.

Claimant's Background

Claimant was nearly 47 years old at the time of the administrative hearing on July

22, 2010. (Tr. at 47.) Claimant quit school in the seventh or eighth grade; he can read only

a little and cannot spell.  (Tr. at 50.)  Subsequent testing showed him to be virtually

illiterate.  (Tr. at 411-19.)  In the past, he worked as a timber cutter.  (Tr. at 47-49.)  His

official employment record is sparse; no earnings are reported for 1979-84, 1986-87, 1989-

97, 1999, and 2002-03. (Tr. at 177.) In 1978, 1985, and 1988, Claimant earned $540, $648

and $233, respectively.  Id.  His earnings in 1998, 2000, 2001, 2004 and 2006 were $2120,

$1683, $1741, $2619, and $6890.  Id.  His highest earnings by far were in 2005, at $24,021.

Id.  The court notes that Claimant reported that his work as a timber cutter lasted from 1975

to October 11, 2005.  (Tr. at 228.)  His attorney described him as a "career" timber cutter

who worked at the heavy exertional level. (Tr. at 45-46.)  He told the consultative medical

examiner that he had cut timber for 25 years. (Tr. at 268.) The court credits Claimant as having worked steadily as a timber cutter prior to October 11, 2005; unfortunately, it appears that his earnings were not reported to the Social Security Administration or workers' compensation.[1]

Injury Record

Claimant is a poor historian of his injury and medical record. Review of the entire record (his testimony and his statements to physicians) yields a conclusion that Claimant has suffered three major injuries prior to his application for benefits. On an unknown date, probably in 2000 or 2001, Claimant was cutting a tree and the tree fell on him, breaking his hard hat. (Tr. at 68-69.) This injury has left him with severe, recurrent headaches, and low back pain radiating to both hips and legs. (Tr. at 68, 268.)

In October of 2005, Claimant slipped on a wet log while carrying a chain saw and other items and fell on his shoulders and neck. (Tr. at 46.) A file penetrated the corner of his eye, leaving him essentially blind in that eye, with some double vision. (Tr. at 64.) He experiences continual pain in his shoulders, and stated that his doctor never released him to return to work. (Tr. at 69-70.) The ultimate disposition of his workers' compensation claim is not in the record.

---

[1] It is not unknown for an employer in a high injury industry, such as timbering, to underreport the number of employees, resulting in lower employer taxes and lower workers' compensation premiums. When an employee is injured on the job, the employer then reports the employee and his earnings to the workers' compensation insurer, the Internal Revenue Service and the Social Security Administration, thus avoiding liability for the occupational injury. Because Claimant's earnings were not reported to the federal agencies, he is apparently ineligible for disability insurance benefits and must seek Supplemental Security income. Such a dishonest employer profits at the expense of honest employers, other taxpayers, and his own employees.

In 2008, Claimant and others were riding around and stopped near an air shaft for an old coal mine. (Tr. at 78.) They lit a fire and accumulated methane gases exploded from the mine, severely burning Claimant and his friends. (Tr. at 78-80.) Claimant was treated at Cabell Huntington Hospital in the burn unit for ten days and left the hospital against medical advice. (Tr. at 80.)

In addition, when a child he nearly severed his left thumb; a doctor sewed it back on but he has limited feeling in it and drops items. (Tr. at 65-66.) His dominant hand is the left. (Tr. at 94-95.)

Claimant's Challenges to the Commissioner's Decision

Claimant's attorney did not file a brief. When he filed a request for Appeals Council review of the ALJ's decision, he wrote the following: "The ALJ erred by not giving weight to the opinion of the claimant's treating physician, by giving weight to the government's vocational expert, and by failing to exclude that testimony over the claimant's objection that the vocational expert was biased by conflicting employment." (Tr. at 7.) The undersigned will consider these points and, in addition, whether the ALJ's decision that Claimant is capable of performing work at the light exertional level is supported by substantial evidence. If Claimant is found to be capable of work only at the sedentary exertional level, he may "grid out;" that is, under Part 404, Subpart P, Appendix 2, Rule 201.17, he may be deemed to be disabled.

The Commissioner did not file a brief because Claimant's attorney did not file a brief. The court will assume that the Commissioner would argue that the ALJ's decision was supported by substantial evidence.

<u>Vocational Expert</u>

At the beginning of the administrative hearing, Claimant's attorney raised an issue concerning the impartiality of the vocational expert, Olen Dodd. (Tr. at 37.) Mr. Dodd is an independent contractor for both the Social Security Administration and Brickstreet Mutual Insurance Company, a for-profit insurance company which manages workers' compensation claims. (Tr. at 37, 41.) At the time of the hearing, Claimant had a pending claim before Brickstreet. (Tr. at 37.) Claimant's attorney pointed out that Mr. Dodd and the attorney often appear on behalf of opposing parties in workers' compensation litigation. (Tr. at 39.) Mr. Dodd stated that as an independent contractor, he has performed case management services, independent vocational evaluations, and labor market studies for Brickstreet. (Tr. at 40.) He has not worked on Claimant's workers' compensation claim. (Tr. at 38.) Mr. Dodd stated that his work for Brickstreet Insurance would not interfere with his ability to act in an unbiased way as an expert witness at the administrative hearing. (Tr. at 41-42.)

Later in the hearing, Mr. Dodd testified that he worked for Brickstreet for about 16-17 years, ending in 2007 or 2008, at least two years before Claimant's Social Security hearing. (Tr. at 88.) Claimant's counsel pointed out that Mr. Dodd performed work for Brickstreet during the period 2005-2008 when Claimant had a pending case, and asserted that Mr. Dodd's employment would affect his ability to render an independent opinion. (Tr. at 92.) The ALJ overruled the objection to Mr. Dodd's designation as a vocational expert. (Tr. at 92-93.) The undersigned proposes that the presiding District Judge **FIND** that the ALJ's ruling as to Mr. Dodd's perceived bias was not error; however, Mr. Dodd's connection to Brickstreet during the time that Claimant's workers' compensation case was pending may

go to the weight given to his testimony.

When the vocational expert testified concerning Claimant's past work during the prior fifteen years, it appears that Mr. Dodd erroneously assumed that Claimant's employment was limited to that which was reported to the Social Security Administration. (Tr. at 93.)  In fact, Mr. Dodd testified that Claimant did not have SGA (substantial gainful activity), despite Claimant's counsel's statement that his client was a "career" timber cutter. (Tr. at 93, 45.)

Neither the ALJ nor Claimant's counsel explored the facts of Claimant's employment such as the number of years he worked, or whether he was paid in cash.  This failure is important because Claimant is a person with little education, with many years of arduous unskilled physical labor, who is not working, and who is no longer able to do such work because of a severe impairment.  If so, Claimant may fall under the provisions of 20 C.F.R. § 416.962, and may be considered disabled.

<u>Opinion of Treating Physician</u>

Claimant was treated by Timothy R. Deer, M.D. at The Center for Pain Relief at Saint Francis Hospital, his treating physician, from at least June of 2005 through the administrative hearing.  The most recent reports from Dr. Deer reflect the following:

> 10/12/09: DIAGNOSIS:
> 　　1) Cervical strain/sprain
> 　　2) Shoulder/arm pain * * *
> The patient is a well-developed, well-nourished gentleman who has severe diminished range of motion both of the cervical and lumbar spine.  He had decreased range of motion of his shoulder, the left shoulder being much worse than the right.  We did review his MRI of the left shoulder which shows a torn tendon.  MRI of the cervical spine showed spondylosis and disc disease.  MRI of the right shoulder shows torn labrum.  He had decreased abduction and internal rotation of the shoulders bilaterally.  He had swelling of the shoulders bilaterally.

8

Dr. Deer recommended an orthopedic surgery referral.  (Tr. at 396.)  The report of a visit on January 8, 2010 repeated the same findings.  (Tr. at 399.)  On May 9, 2008, Dr. Deer partially completed a form, indicating that Claimant was "disable," without further elaboration.  (Tr. at 407-10.)

On January 22, 2010, Claimant was seen by Jason A. Castle, M.D., an orthopedic surgeon.  (Tr. at 404-05.)  Dr. Castle's assessment was: 1.  Impingement syndrome shoulder; 2. Cervical radiculitis; 3.  Cubital tunnel syndrome; and 4.  Tendinitis.  Id.  He offered Claimant steroid injections and recommended re-evaluation in 6 to 8 weeks.  Id. No further report from Dr. Castle is in the record.

On September 29, 2009, Claimant underwent a consultative medical examination by Alfredo Velasquez, M.D., who diagnosed lumbosacral strain with radiculitis (inflammation of the spinal nerve roots) and cervical muscle strain with radiculitis.  (Tr. at 269.)  Dr. Velasquez recommended that Claimant see a neurosurgeon.  (Tr. at 269.)

The ALJ gave "moderate weight to Dr. Deer's opinion as a treating physician regarding the cervical and shoulder sprains."  (Tr. at 21.)  He gave "no weight" to Dr. Deer's May 9, 2008 opinion that Claimant is disabled as that issue is reserved to the Commissioner.  Id.  He gave "moderate weight" to Dr. Velasquez's indication of "slight tenderness in the cervical and lumbar spine" and "small reductions or no reduction in the ranges of motion."  Id.  He gave "moderate weight" to the opinions of two Disability Determination Service ("DDS") physicians who did not examine Claimant but did review his medical records through Dr. Velasquez's evaluation.  Id.  The DDS physicians opined that Claimant could perform work at the medium exertional level.  (Tr. 280-88, 361.)

The undersigned proposes that the presiding District Judge **FIND** that the ALJ

9

properly weighed the evidence of record from Dr. Deer in keeping with the applicable regulations and caselaw.  Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996) (A treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence."); 20 C.F.R. § 416.927(d)(2)-(6) (2007) (If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the following factors: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors).  Dr. Deer's 2008 opinion that Claimant is "disable" was not otherwise supported by persuasive analysis, although his diagnosis was confirmed by the consultative medical examiner and the orthopedic surgeon.

Vocational Expert's Opinion and Hypothetical Question

The ALJ posed a hypothetical question to the vocational expert which included the following assumptions: same age, education and past work as Claimant; light exertional level with occasional climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; occasional stooping, balancing, kneeling, crouching or crawling; occasional reaching with the dominant left arm; no depth perception due to sight in only one eye; no exposure to extreme cold, extreme heat, vibration, fumes, odors, dust, gases, poor ventilation, hazards and heights.  (Tr. at 94.)  The ALJ specified that the hypothetical person "is limited in reading to very simple, very, very simple phrases."  Id.  Mr. Dodd responded that such a person could not perform his past relevant work as a timber cutter, but that he could work at the light exertional level as a laundry folder, bottle packer or hand

presser.  (Tr. at 95.)  At the sedentary exertional level, Mr. Dodd suggested work as an eyeglass polisher, film inspector, or order clerk.  (Tr. at 96.)

Claimant's attorney effectively cross-examined Mr. Dodd, stressing Claimant's inability to read and write, his limitations in reaching, grabbing and holding objects, and his eyesight impairment.  (Tr. at 97-109.)

The ALJ's decision contains a lengthy recitation of Mr. Dodd's testimony on direct and cross-examination, but no analysis of Mr. Dodd's statements in response to the questions.  Even though Claimant's attorney gained several concessions from Mr. Dodd, the ALJ simply found that Claimant "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (Tr. at 23, 26-27.)  It is impossible to determine which jobs the ALJ concluded that Claimant could perform and whether those jobs actually exist.

The undersigned notes that the ALJ made a finding as to Claimant's education which is utterly inconsistent with the hypothetical question that he posed to the vocational expert. The ALJ found that Claimant "has a limited education," citing to 20 C.F.R. § 416.964.  (Tr. at 23.)  That regulation defines a "limited education" as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs.  We generally consider that a 7th grade through the 11th grade level of formal education is a limited education."  Claimant's testing revealed that he reads words and spells at the first grade level and comprehends sentences at less than kindergarten level.  (Tr. at 415.)  Even though Claimant candidly admitted that he can neither read nor write (tr. at 50), the ALJ

chose not to believe him because he made it to the seventh grade.  (Tr. at 15-16.)[2]  There is no explanation for the inconsistency between the ALJ's finding of "limited education" and his hypothetical question which limits the person to reading very, very simple phrases. Moreover, the regulations define "illiteracy" as including a person who "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name."  20 C.F.R. § 964(b)(1).  By this definition, Claimant is illiterate.

After careful review of the entire record, the undersigned concludes that as of the date of the ALJ's decision, Claimant was a "younger individual" between 45 and 49 years of age and illiterate.  Pursuant to Rule 201.17 of Part 404, Subpart P, Appendix 2, Claimant would be "disabled" if he were limited to the sedentary exertional level and considered to be unskilled.  If Claimant is limited to the light exertional level, Rule 202 would indicate that he is not disabled.  Claimant's prior work may have been semi-skilled, but there is no evidence in the record that any of his skills are transferable.  Given his age and IQ (mid 70s), the state of the record is such that the undersigned must propose that the presiding District Judge **FIND** that there is not substantial evidence supporting the ALJ's decision denying benefits.

It is respectfully **RECOMMENDED** that the presiding District Judge **REVERSE** the final decision of the Commissioner, **REMAND** this matter to the Commissioner for further proceedings pursuant to the fourth sentence of § 405(g), and **DISMISS** this case from the docket.

The parties are notified that this Proposed Findings and Recommendation is hereby

---

[2]   This judicial officer commonly sees defendants charged with crimes who attend school for ten to twelve years but never learn to read.

**FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

 December 18, 2012 
     Date

Mary E. Stanley
United States Magistrate Judge